NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| KENNETH HAROLD GOURLEY,  )<br>)<br>Petitioner,  )<br>)<br>V.  )<br>)<br>ERIC WILSON, Warden,  )<br>)<br>Respondent.  )<br>) | Civil No. 6:09-CV-110-GFVT<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is ripe for a decision on Kenneth Harold Gourley's *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241. For the reasons discussed below, the Petition will be denied.

**I.**

On April 2, 2009, inmate Kenneth Harold Gourley filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. He claims that he was credits to his federal sentence for time spent in State custody related to the same criminal conduct; and the BOP's calculation of his sentence is based on his having a non-parolable sentence, when the sentence is actually parolable, because it occurred before the Sentencing Reform Act of 1984 ("SRA"), which became effective November 1, 1987.

This Court earlier summarized Gourley's factual allegations as follows:

> Gourley was arrested by Oklahoma authorities on October 22, 1986, and charged with numerous State firearms offenses, for which he was sentenced to 100 years imprisonment on January 12, 1987. Gourley's sentence was later

reduced to 60 years. According to the only case about Gourley which is reported in Westlaw, *United States v. Gourley*, 835 F.2d 249 (10th Cir. 1987), *cert. denied*, 486 U.S. 1010 (1987), he was also charged with federal charges arising out of the same facts.

After his State conviction and sentencing, on March 9, 1987, Gourley alleges he appeared in the U.S. District Court for the Northern District of Oklahoma where he was convicted under 18 U.S.C. § 1202(a) and was sentenced to life without parole. On appeal of the federal conviction and sentence, the United States Court of Appeals for the Tenth Circuit noted that ten (10) years of the 100-year state sentence "were imposed for the same acts as the U.S. District Court conviction – *i.e.*, possession of a firearm by a convicted felon." 835 F.2d at 252.

Gourley's conviction and sentence were affirmed (*id.* at 253), the Court finding that the imposition of a life sentence to be served after a 100-year state sentence was not cruel and unusual punishment; he was exactly the career criminal at which Section 1202 was aimed; and none of his other Constitutional claims had merit. *Id.*

After the sentencing in federal court, Petitioner was returned to the custody of the State, to complete service of the State sentence. He apparently had a federal detainer lodged against him during that service. It was not until he was paroled by Oklahoma, on February 20, 2008, that he came into BOP custody, began serving his federal sentence, and discovered that he would receive no credits for any of the time spent incarcerated prior to that date.

[R. 6.] Gourley first tried to obtain sentence credits via the BOP's administrative process, and the Warden admits that Gourley exhausted that process.

The Petitioner claimed then and now that he is entitled to credit toward his federal sentence for the entire time spent in State custody because the conduct related to the same incident. Accordingly, Gourley reasons, he should be awarded (1) the 82 days spent in custody *before* the first sentencing, *i.e.*, from his arrest on October 22, 1986, to his State sentencing on January 11, 1987; and (2) the time spent in service of the State sentence *after* that sentence was imposed, *i.e.*, from January 11, 1987, to his February 20, 2008, transfer to the custody of the

2

BOP, 21 years later.

This Court nots that the Gourley was successful in having the first period of time credited to his federal sentence. However, the BOP did not complete consideration of the request for a *nunc pro tunc* designation. Accordingly, the Court directed the Respondent Warden to be served with the Petition.

Warden Wilson, by counsel, has now filed a Response, to which he has attached exhibits, including a supporting Declaration of a BOP specialist at the Federal Bureau of Prisons' Designation and Sentence Computation Center ("DSCC"), in Texas.

Wilson admits that the State and federal charges and ultimate sentences were based on the same incident; explains why Gourley was granted the prior custody credits which he had sought (for October 22, 1986, to January 11, 1987); and details why Gourley was not eligible for a *nunc pro tunc* designation for the 21-year period of time. Wilson's position is that Gourley's sentence has been properly commenced and calculated.

Although not authorized, Gourley has submitted a Reply which the Court will consider. Gourley again stresses that the federal judge did not order the federal sentence to run consecutively to the Oklahoma sentence. Rather, Gourley insists that the federal judge intended for the federal sentence to run concurrently to Oklahoma's, as both were for the "very same conduct." Meanwhile, the "presumption of concurrence" prevails. Under this pre-SRA law, two separate sentences based on the same conduct are presumed to run concurrently.

## II.

Calculation of federal sentences is the duty of the Attorney General through the Bureau of Prisons ("BOP"), not by the Court. *See United States v. Wilson,* 503 U.S. 329, 334-37 (1992);

*McClain v. Bureau of Prisons,* 9 F.3d 503, 505 (6th Cir.1993). A district court may, however, grant relief under 28 U.S.C. § 2241. *Wright v. United States Bd. of Parole,* 557 F.2d 74, 77 (6th Cir.1977). Equitable arguments have been presented by such habeas proceedings. *See United States v. Blankenship,* 733 F.2d 433, 434 (6th Cir. 1984); *United States v. McBride,* 21 F.3d 429, 1994 WL 108989 (6th Cir.1994) (unpublished); *United States v. Trent,* 989 F.2d 501, 1993 WL 78767 (6th Cir.), *cert. denied,* 508 U.S. 945 (1993) (unpublished). *Hensley v. Stine*, 2005 WL 1657088, *4 (E.D.Ky. 2005) (unpublished). However, in the instant case, the equities are lacking.

### A.

It is the facts in this case which are determinative of the outcome. First, as is now apparent from the March 9, 1987, Judgment of the United States District Court for the Northern District of Delaware, in *United States v. Gourley*, No. 86-CR-185-C, Gourley was sentenced to "LIFE WITHOUT PAROLE." [Att. 3.] His sentence is life. There is no ambiguity. Neither the Sentencing Reform Act nor any presumption had a role in this sentence. Gourley will never be paroled. As the District Court ordered, he will have to serve his lifetime.[1]

Other facts help determine why the BOP determined that Gourley was not eligible for running the sentences concurrently. Gourley's Oklahoma sentence was handed down first. The Gourley was already serving it when the Gourley was "borrowed" from State custody for the adjudication of and ultimate sentencing in the charges pending in federal court. The federal court

---

[1] Respondent points to 18 U.S.C. § 4161, the statute governing credits for good conduct, which not only makes such credits available but also has an explicit limit. Good conduct credits are restricted to only those prisoners with sentences "for an indefinite term other than for life." *Id*. As the instant Gourley is serving a life sentence, he is not eligible for these credits. Therefore, there are no such credits in the calculation of his sentence. Att. 8-9.

knew of the Oklahoma sentence and could have chosen to order the federal sentence to be served concurrently with the State sentence.

The trial court in Gourley's case did not choose to order concurrency. Its written Judgment was silent as to either concurrent or consecutive sentences. That does not mean, however, that the record does not reflect the court's intent. Gourley states that he is in the process of obtaining the sentencing transcripts to prove that the court intended for its sentence to run concurrently. This Court is dubious about his being able to do so. In the opinion culminating Gourley's direct appeal, the Tenth Circuit quoted lengthily from the trial judge's harsh words in these transcripts and also drew its own conclusions:

> Gourley maintains that a life sentence for possession of a firearm is out of proportion to the severity of his crime. The circumstances surrounding Gourley's arrest, however, and his eleven prior felony convictions justify the trial judge's decision to sentence him to life in prison. The trial judge considered all of the relevant factors in reaching his decision, including the fact that Gourley was already under a 100-year sentence imposed by Oklahoma and arising out of the same incident as the federal offense. The judge considered the fact that it appeared to be a mere fortuity that one or more police officers were not killed during Gourley's arrest on October 27, 1986. The trial judge also considered Gourley's eleven prior felony convictions and the fact that more than half of those prior crimes involved the use of firearm.

*United States v. Gourley*, 835 F.2d at 253. Gourley's sentence was affirmed.

To date, Gourley has more than twenty (20) years later offered nothing to establish an ambiguity in the trial record's Judgment or to controvert the facts and law presented in the appellate court opinion. The law for when a federal sentence commences remains the same as it was when Gourley was sentenced. The service of a federal sentence begins on the date upon which the defendant is "received" in custody for service of his federal sentence. *Compare* the first paragraph of 18 U.S.C. § 3568 (the pre-SRA provision) (repealed, effective November 1,

1987, Pub.L. 98-473, Title II, § 212(a)(2), Oct. 12, 1984) *with* 18 U.S.C. § 3585(a) (the post-SRA provision, still in use).

Under both old and new law regarding the commencement of federal sentences, service of Gourley's sentence could not have commenced until the State authorities relinquished the prisoner upon satisfaction of his obligation to the State. *See Thomas v. Whalen*, 962 F.2d 358, 361 n. 3 (4th Cir.1992). For Gourley, that did not occur until Oklahoma paroled and released him to federal custody on February 20, 2008. No law or intervening change in the law, including the SRA, operates to transmute Gourley's court-ordered, non-parolable, consecutive federal sentence to any other type of sentence.

**B.**

The SRA changed one aspect of calculating prisoners' sentences, *i.e.*, the award of prior custody credits, but the BOP did not use the version which would have disadvantaged Gourley. Again, the relevant statute is the pre-SRA 18 U.S.C. § 3568, which provided for prior custody credits in the second sentence:

> . . . The Attorney General shall give any such person *credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed*.
> . . .

18 U.S.C. § 3568 (emphasis added). It was recodified into Section 3585, at subsection (b), which now governs post-SRA prisoners:

> **18 U.S.C. § 3585. Calculation of a term of imprisonment**.
>   . . .
> **(b) Credit for prior custody**.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–
>     (1) as a result of the offense for which the sentence was imposed;

>or
>(2) as a result of any other charge for which the defendant was
>arrested after the commission of the offense for which the sentence
>was imposed;
>*that has not been credited against another sentence.*

28 U.S.C. § 3585 (emphasis added).  The change is obvious.  The change is significant in that it limits the prior custody credits that a post-SRA Gourley can receive.  Where the prior statute provided for certain pre-sentencing time to be credited to a federal sentence, the latter statute provides that, of the same pre-sentencing time, the only amount which may be credited is the time *that has not been credited against another sentence.*  Since 1987, awarding a prisoner with "double credit" for time credited toward another sentence is specifically prohibited by 18 U.S.C. § 3585(b).

Gourley's crime, however, pre-dated the SRA, and the record shows that the pre-SRA statute was used correctly by the BOP.  Gourley was granted 82 days of pre-sentencing credit from his arrest on October 22, 1986, to his first sentencing (the State sentence) on January 11, 1987, regardless of whether he also received the credits toward his State sentence.  Under the new, post-1987 statute, whether Gourley would receive the credits depends on whether the State had applied them to his State sentence.  There is no error of law here.

## C.[2]

Gourley seeks federal credit for the 21-year period that he spent in service of the Oklahoma sentence.  Gourley seeks credit for the time he spent in federal custody *via* the *Writ of*

---

[2] As the seminal case, *Barden v. Keohane*, 921 F.2d 476 (3rd Cir. 1990), explains: "The Latin phrase *nunc pro tunc* describes a doctrine that permits acts to be done after the time they should have been done with a retroactive effect--a Latin term meaning literally, "now for then." An act *nunc pro tunc* is an 'entry made now of something actually previously done to have effect of former date, [previously] omitted through inadvertence or mistake.' Black's Law Dictionary at 964 (5th ed. 1979)." *Id.* at 478, fn. 2.

*Habeas Corpus Prosequendum*, the doctrine of primary jurisdiction defeats his claim. The law is settled that if the prisoner first comes into the custody of one sovereign, as the instant Gourley was in the custody of the State of Oklahoma, then that sovereign has primary custody of the prisoner. Moreover, the original sovereign retains primary custody, even when he is taken elsewhere by authorities pursuant to a writ of *Habeas Corpus ad Prosequendum*, as Gourley was. The well-established rationale is that the second sovereign has only "borrowed" him and the State retains primary jurisdiction over him. *See Thomas v. Whalen,* 962 F.2d 358, 361 n. 3 (4th Cir.1992); *Huffman v. Perez*, 230 F.3d 1358, 2000 WL 1478368 (6th Cir. 2000) (Table, unpublished).

Gourley also seeks to have the BOP designate the Oklahoma prison(s) as a place where he was serving his federal sentence. This is known as seeking a *nunc pro tunc* designation. If the designation were made in this case, *i.e.*, that Gourley was serving his federal sentence in the Oklahoma facility or facilities, then the service of his federal sentence would not begin on February 20, 2008, when he was surrendered to the BOP; rather, service of the federal sentence would begin on the day when the federal sentence was handed down, March 9, 1987.[3]

Again, Gourley's federal judgment did not provide for its sentence to run concurrently with the Oklahoma sentence which he was already serving. Nor did the State sentence mention the pending charge in federal court. A *nunc pro tunc* designation is a mechanism whereby the

---

[3] Typically, a prisoner wants concurrent credits so as to complete service of the federal sentence sooner and so he or she brings the issue in a Section 2241 habeas proceeding, as Gourley has done. Gourley, however, cannot be released – ever. In his latest pleading, he explains that his motivation for seeking the designation, hence earlier beginning date of his sentence, is that the credits "will favorably affect Gourley's custody and classification status. The more time served on a federal sentence a prisoner has [sic] increased prospects for transfer to a less restrictive facility closer to home." The Court does not decide the issue of whether this matter is actually a conditions of confinement case for which the $350.00 filing fee should have been collected.

8

BOP may grant concurrency of the federal sentence despite a written Judgment which does not provide it. The prisoner's right to make such a request and the BOP's duty to consider the request is explained in *Barden v. Keohane*, 921 F.2d 476 (3rd Cir. 1990).

During a Section 2241 proceeding, the State court had ordered its sentence to be served concurrently with a future federal sentence; but the later federal Judgment was silent on the issue. The Third Circuit examined the BOP's authority to effect concurrence in the Gourley's federal sentence, when the written Judgment did not grant it and the federal judge's intent could not be known because he had died. The appellate court decided that the authority came from 18 U.S.C. § 4082(b), prior to November 1, 1987 (repealed), and now from 18 U.S.C. 3621(b), the authority since November 1, 1987. The court noted no difference between the statutes and held as follows:

> . . . Barden is entitled to a writ of habeas corpus to compel the Bureau to consider his case. We do not pass upon Barden's contention that he is entitled to a favorable exercise of the broad discretion the [BOP] has in acting on his request. Instead we hold only that the federal authorities have an obligation, on the peculiar facts before us, to look at Barden's case and exercise the discretion the applicable statute grants the Bureau to decide whether the state prison in which he served his sentence should be designated as a place of federal confinement *nunc pro tunc*.[FN4]

921 F.2d at 478 (FN4: "We recognize that neither the federal courts nor the Bureau are bound in any way by the state court's direction that the state and federal sentences run concurrently. *See* U.S. Const. art. VI, cl. 2.").

After finding that the federal government had the statutory authority to make the *nunc pro tunc* designation, the *Barden* Court instructed the BOP on how to decide the matter. It directed, as follows:

> The answer to [whether to grant the designation] . . . will depend on the Bureau's

> practice in making such designations, as well as its assessment of Barden's conduct in custody, the nature of his crime and all the other factors that govern penal authorities' consideration of a prisoner's request for relief from the strict enforcement of his sentence.

*Id.* The question of whether to grant such a boon is now guided by the BOP's Program Statement ("P.S.") 5160.05, Designation of State Institution for Service of Federal Sentence. The decision turns on whether the designation is consistent with the intent of the federal sentencing court and/or the goals of the criminal justice system.

In the instant case, Gourley's request for a *nunc pro tunc* designation was sent to a specialized branch, the BOP's Designation and Sentence Computation Center ("DSCC"), in Grand Prairie, Texas, for consideration of the merits. In the BOP's Response to the instant Petition, a Policy Correspondence Specialist at the DSCC, named John A. Farrar, has offered a declaration in which he attests to having audited the Gourley's sentence calculation. He declares that the sentence has been calculated correctly and that "Gourley is not eligible for consideration of a concurrent designation." Thus, the BOP answered that question about Gourley in the negative.

The BOP's decision to a *nunc pro tunc* designation is reviewed by federal courts only to determine if the denial was arbitrary and capricious. *See Garrett v. Banks*, 2009 WL 223458, *12 (C.D. Cal. 2009). Given the fact that the federal court did not specify concurrency in its judgment and in fact, gave a lengthy recitation of Gourley's substantial criminal history at his sentencing, the BOP's decision is (that Gourley is ineligible for a *nunc pro tunc* designation) neither arbitrary nor capricious.

Finally, Gourley's reliance on a "presumption of concurrence" is not well placed. He

cites and quotes from *United States v. Earley*, 816 F.2d 1428, 1431-32 (10th Cir. 1987), for the following statement of law:

> Here both the oral pronouncement by the judge and the written judgment and commitment order said nothing concerning whether the new sentences ran concurrently with or consecutively to the sentence Earley was already serving. The federal courts have adopted a presumption that federal sentences imposed at different times run concurrently, absent an express statement to the contrary. Our circuit recognized the presumption of concurrent sentences in *Subas v. Hudspeth,* 122 F.2d 85 (10th Cir.1941), in which we stated: "Absent clear language to the contrary, it is presumed that sentences imposed on more than one offense at the same time, or at different times, will run concurrently." *Id.* at 87. This presumption has in effect become a rule of law. Recognizing it as such, Congress has, by a statute effective November 1, 1987, changed the rule to make federal sentences run consecutively if they are imposed at different times, as here, but kept the concurrency rule for multiple sentences imposed at the same time.[FN3] Pub.L. No. 98-473, §§ 212(a)(2), 235(a)(1), 98 Stat. 1837, 2000, 2031-32 (1984), as amended by Pub.L. No. 99-217, § 4, 99 Stat. 1728 (1985) (to be codified at 18 U.S.C. § 3584(a)).

*Id.* at 1431. It is doubtful that this was the law in the Tenth Circuit in 1987.

To the contrary, the dissent in *Earley* insisted that the presumption did not prevail, two circuit judges joining in following:

> With no analysis, the majority states flatly that the presumption of concurrence "has in effect become a rule of law," citing *Subas v. Hudspeth*, 122 F.2d 85 (10th Cir.1941), and a comment from the Senate Report on the Crime Control Act which also cites to *Subas*.FN2 But the cited comment from *Subas* was only dicta.FN3 The holding in *Subas* was that the presumption did not apply.

> The fact is that no case in this circuit has held that the presumption of concurrence must apply to a case like this. No supreme Court case has so held. . . The Fifth Circuit is left as the sole circuit with analogous holdings.

> To be sure, there is dicta, spread through dozens of cases, referring generally to a "rule of law" regarding a presumption of concurrence. But it is just that: both general and dicta. . . .

11

*Id.* at 1438.

Gourley cites no law adopting such a presumption in the 6th Circuit – then or now. Additionally, the *Earley* dissent is persuasive. An obscure device from another circuit is not persuasive, even one called "a rule of law," to resolve a sentence calculation issue. The BOP is not required to use the purported rule of law as determinative, rather than employing the appropriate guidelines in the statutes, regulations, and program statements. The experience of this Court mirrors the following:

> When federal courts actually face the necessity of deciding the direct issue before them, they frequently avoid the presumption or apply it in discernible categories of fact situations, the overwhelming majority of which are not analogous to this case. A review of textbooks on sentencing discloses a vast silence on the subject of the supposed "rule of law" or at most a passing comment so general as to be worthless for application to specific cases with differing fact situations.[FN6] That reflects the trouble with grasping "rules of law" from the ether. They are too vaporous to apply to specific cases.

*Id.* The rationale from *Earley* is adopted in rejecting Gourley's presumption of concurrence claim.

### III.

In sum, there was no error of fact or law in the BOP decision. Gourley's sentence is correctly calculated and that he has been given every credit for which he was eligible. Accordingly, the Court being advised,

**IT IS ORDERED** as follows:

(1)  Respondent's Motion to Seal Exhibit 1 [R. 15] is **GRANTED**.

(2)  Kenneth Harold Gourley's Petition for Writ of Habeas Corpus is **DENIED**;

(3)     this matter will be **DISMISSED,** *sua sponte,* from the Court's docket; and

(4)     Judgment shall be **ENTERED** contemporaneously with this Memorandum Opinion and Order in favor of the named Respondent.

This the 10th day of August, 2009.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge